# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

**WILLIAM SHANKLIN,**

      Petitioner,

v.                                                   Civil Action No. **3:11CV29**

**DIRECTOR OF THE DEPARTMENT OF CORRECTIONS,**

      Respondent.

## MEMORANDUM OPINION

William Shanklin, a Virginia state inmate proceeding *pro se* and *in forma pauperis*, brings this petition pursuant to 28 U.S.C. § 2254 ("§ 2254 Petition"). Shanklin challenges his convictions in the Circuit Court for the City of Hampton ("Circuit Court") for capital murder and abuse and neglect of a child. Shanklin raises the following grounds for relief:

| | |
|---|---|
| Claim 1 | Shanklin failed to receive the effective assistance of counsel because counsel did not allow Shanklin to testify in his own defense. |
| Claim 2 | Shanklin failed to receive the effective assistance of counsel because counsel did not present the interview logs which would have shown that Major Seals[1] committed perjury. |
| Claim 3 | The Virginia courts violated Shanklin's rights by failing to allow Shanklin to call Major Seals to testify in the evidentiary hearing conducted in the Circuit Court as part of Shanklin's state habeas proceedings. |

The matter is before the Court on the Motion to Dismiss filed by Respondent and several non-dispositive motions filed by Shanklin. For the reasons that follow, the Motion to Dismiss will be GRANTED and Shanklin's nondispositive motions will be DENIED.

---

[1] During the course of Shanklin's arrest and eventual conviction, Seals was promoted from Captain to Major. The Court will refer to Seals as Major Seals or Seals.

## I. THE APPLICABLE CONSTRAINTS UPON FEDERAL HABEAS REVIEW

In order to obtain federal habeas relief, at a minimum, a petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  Thus, "claims of error occurring in a state post-conviction proceeding cannot serve as a basis for federal *habeas corpus* relief." *Bryant v. Maryland*, 848 F.2d 492, 493 (4th Cir. 1988) (citing cases).  This is so because the habeas petitioner is detained as a result of the underlying state conviction, not the state collateral proceeding.  *Lawrence v. Branker*, 517 F.3d 700, 717 (4th Cir. 2008) ("[E]ven where there is some error in state post-conviction proceedings, a petitioner is not entitled to federal habeas relief because the assignment of error relating to those post-conviction proceedings represents an attack on a proceeding collateral to detention and not to the detention itself." (*citing Bryant*, 848 F.2d at 493)).  Thus, because Shanklin's third claim merely complains of error in the state post-conviction proceedings, that claim does not provide a cognizable basis for federal habeas corpus relief.  Accordingly, Claim 3 will be DISMISSED.

The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996 further circumscribed this Court's authority to grant relief by way of a writ of habeas corpus.  Specifically, "[s]tate court factual determinations are presumed to be correct and may be rebutted only by clear and convincing evidence." *Gray v. Branker*, 529 F.3d 220, 228 (4th Cir. 2008) (*citing* 28 U.S.C. § 2254(e)(1)).  Additionally, under 28 U.S.C. § 2254(d), a federal court may not grant a writ of habeas corpus based on any claim that was adjudicated on the merits in state court unless the adjudicated claim:

> **(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Supreme Court has emphasized that the question "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (*citing Williams v. Taylor*, 529 U.S. 362, 410 (2000)).

## II. PROCEDURAL HISTORY

A jury convicted Shanklin of capital murder and abuse and neglect of a child. Shanklin appealed his convictions. The Court of Appeals of Virginia aptly summarized the overwhelming evidence of Shanklin's guilt:

> [T]he evidence proved that at the time of the murder, D.M., the four-year-old victim, was living with his aunt, Matriesha Turner, and her boyfriend, appellant.
> Corporal Scott Anderson testified that appellant and Turner reported a missing child in the early morning of July 14, 2005. Appellant told police that he last saw D.M. the previous evening when, while appellant was in the bathroom, the victim complained about his hand hurting, and appellant told him to take a bath. Appellant stated that after he came out of the bathroom he could not find D.M. in the residence and noticed that the door was "not the way I left it." Corporal Jason Price testified that when he arrived at the residence that morning, he noticed that the bottom of a cooler in the kitchen was covered in a pungent bleach-like substance. Price also saw a box of latex gloves on top of a grill that was resting on a highchair. On the gloves was a "red drop of something" that Price believed "could have been blood."
> During a police station interrogation that began at 9:20 a.m. that same morning, appellant told Corporal Steven Hatfield that he was alone with D.M. when the child went missing. Appellant stated that a bowl of hot water scalded D.M.'s hands, foot and buttocks approximately three days before the incident. Appellant told Hatfield that he believed D.M. left the residence on the evening in question because he did not want to take a bath.
> The next day, after appellant conferred with his attorney, the attorney provided the police with the location of D.M.'s body, and appellant led police to the wooded area where he buried the boy.[2]   Major Kenneth Randall Seals

---

[2] Although Shanklin's pre-trial counsel provided the police with the approximate location of D.M.'s body at 9:35 a.m. on July 15, 2005, (Feb. 6, 2007 Tr. 299–300), the police did not locate D.M.'s body until 12:47 p.m., when Shanklin lead Major Seals to D.M.'s body (*Id.* at 302–04).

testified that after appellant admitted burying D.M., appellant stated that he occasionally disciplined D.M. with curling irons that would burn D.M.'s hands. Appellant told Seals that he did not kill D.M. but found him dead in bed and decided to bury him in the woods because he didn't want Turner, his girlfriend, to find out what had happened.

Dr. Gunther, the forensic expert who performed the autopsy, testified that she "thought the primary cause of death was inflicted brain injury or shaken impact syndrome," accompanied by "a thoracic spine fracture, untreated second-degree burns, and a liver laceration from blunt impact." Dr. Gunther stated that the burn marks were most likely inflicted between a couple of days and two weeks before D.M.'s death. She added:

> Somewhere within the day of his death somebody shook him so bad that his brain swelled to the point that he died; somewhere in there someone broke his spine and partly lacerated his cord and caused him paralysis; and the very last thing that happened was this impact to his belly that split his liver.

> . . . .

The evidence showed someone shook D.M. to death, broke his spine, and split his liver. Appellant admitted he was alone with D.M. on the evening in question. In addition, appellant buried D.M.'s body and lied to the police about the boy's disappearance, only later admitting to burying him in a wooded area. Appellant also lied about the burns on D.M.'s body, later telling a police officer that he disciplined D.M. with a curling iron when the child "would get on [appellant's] nerves. Accordingly, the evidence was sufficient to prove beyond a reasonable doubt that appellant willfully, deliberately, and premeditatedly killed D.M.

*Shanklin v. Commonwealth*, No. 0439-07-1, at 3–5 (Va. Ct. App. Nov. 7, 2007) (fourth alteration in original). On February 26, 2008, the Supreme Court of Virginia refused Shanklin's petition for appeal. *Shanklin v. Commonwealth*, No. 072427 (Va. Feb. 26, 2008).

On July 15, 2008, Shanklin filed with the Supreme Court of Virginia a Motion for Appointment of Counsel for Assistance of Petition for Writ of Habeas Corpus. Motion for Appointment of Counsel, *Shanklin v. Dir. Dep't Corr.*, No. 090382 (Va. filed July 15, 2008). Shanklin subsequently filed an amended version of his Motion for Appointment of Counsel. On October 27, 2008, the Supreme Court of Virginia granted the Motions for the Appointment of

4

Counsel and appointed counsel to represent Shanklin in conjunction with his state habeas proceedings. *Shanklin v. Dir. Dep't Corr.*, No. 090382 (Va. Order filed Oct. 27, 2008). On February 26, 2009, Shanklin, by counsel, filed a petition for a writ of habeas corpus with the Supreme Court of Virginia. In that petition, Shanklin raised Claims 1 and 2.

By Order entered on August 7, 2009, the Supreme Court of Virginia referred Claim 1 to the Circuit Court to conduct an evidentiary hearing and issue findings of fact and conclusions of law. Thereafter, the Circuit Court conducted an evidentiary hearing and recommended dismissing Shanklin's claim that his trial counsel prevented Shanklin from testifying. The Supreme Court of Virginia agreed with that disposition and dismissed the claim. *Shanklin v. Dir. Dep't Corr.*, No. 090382, at 2 (Va. Sept. 15, 2010). The Supreme Court of Virginia also dismissed Shanklin's claim pertaining to counsel's efforts to impeach Major Seals on the grounds that Shanklin had not demonstrated deficiency or prejudice. *Id.* at 3.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

To demonstrate the ineffective assistance of counsel, a defendant must show first that counsel's representation was deficient, and second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficient performance facet of *Strickland*, the defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (*quoting Strickland*, 466 U.S. at 689). The prejudice component requires a defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."

*Strickland*, 466 U.S. at 694.  In analyzing ineffective assistance of counsel claims, it is not

necessary to determine whether counsel performed deficiently if the claim is readily dismissed

for lack of prejudice.  *Id.* at 697.

### A.   Shanklin's failure to testify

In Claim 1, Shanklin asserts that "[c]ounsel did not permit [Shanklin] to testify in his own

defense . . . ."  (§ 2254 Pet. 8.)[3]  This claim lacks factual merit.  In rejecting this claim, the

Supreme Court of Virginia held:

> The record, including the circuit court's findings of fact and conclusions of law,
> demonstrates that upon conclusion of the Commonwealth's case, counsel and
> petitioner met for more than an hour and a half to review the evidence presented
> by the Commonwealth and to discuss whether petitioner should testify.  At that
> time, counsel recommended that petitioner not testify because counsel believed
> the inconsistencies in petitioner's testimony would be damaging, and that the jury
> might use petitioner's testimony as a basis for awarding the death penalty.
> *Petitioner then decided of his own volition not to testify.*  Thus, petitioner has
> failed to demonstrate that counsel's performance was deficient or that there is a
> reasonable probability that, but for counsel's alleged errors, the result of the
> proceeding would have been different.

*Shanklin v. Dir. Dep't Corr.*, No. 090382, at 2 (Va. Sept. 15, 2010) (emphasis added).  To

overcome the Supreme Court of Virginia's factual finding that Shanklin decided not to testify of

his own volition, Shanklin must produce "clear and convincing evidence" that counsel prevented

him from testifying.  *See* 28 U.S.C. § 2254(e)(2).  He has not done so.[4]  Rather, Shanklin

---

[3] Because Shanklin's submissions are not usefully paginated, the Court employs the page
numbers assigned to his submissions by the Court's CM/ECF system.

[4] The United States Court of Appeals for the Fourth Circuit has emphasized the exacting
nature of this burden in circumstances like Shanklin's.

> Where the state court conducted an evidentiary hearing and explained its
> reasoning with some care, it should be particularly difficult to establish clear and
> convincing evidence of error on the state court's part.  This is especially so when
> the court resolved issues like witness credibility, which are factual determinations

continues to rely upon his own unconvincing testimony of his conversation with trial counsel, which neither the Circuit Court nor the Supreme of Virginia found credible.

Furthermore, Shanklin cannot demonstrate that counsel acted deficiently in recommending that Shanklin not testify. The Fourth Circuit has emphasized that "the advice provided by a criminal defense lawyer on whether his client should testify is 'a paradigm of the type of tactical decision that [generally] cannot be challenged as evidence of ineffective assistance.'" *Carter v. Lee*, 283 F.3d 240, 249 (4th Cir. 2002) (*quoting Hutchins v. Garrison*, 724 F.2d 1425, 1436 (4th Cir. 1983)). Counsel reasonably perceived that Shanklin would not be a credible witness. At the evidentiary hearing, Shanklin's counsel testified that Shanklin had provided him with two different, inconsistent versions of the events leading up to D.M.'s death. (*See, e.g.*, Evid. Hr'g Tr. 158–59.) Further, if Shanklin took the stand, Shanklin would be required to address the numerous damaging statements he made to the police about his cruel treatment of D.M. Given these circumstances and the possibility of a sentence of death if the jury found Shanklin guilty, counsel felt that if Shanklin got "'on that witness stand and g[o]t torn apart on cross-examination or g[a]ve a story that [the jury] consider[ed] to be incredible, [Shanklin would] not only be found guilty of everything, but [counsel thought] it [would] damage [Shanklin] from the standpoint of a potential death penalty in this case.'" (*Id.* at 180.) Because Shanklin fails to demonstrate any deficiency on the part of counsel, Claim 1 will be DISMISSED.

---

for purposes of Section 2254(e)(1). [F]or a federal habeas court to overturn a state court's credibility judgments, the state court's error must be stark and clear.

*See Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010) (alteration in original; citations and quotation marks omitted).

7

### B.   Allegedly deficient cross-examination of Major Seals

In Claim 2, Shanklin faults counsel for not using the police's "INTERVIEW ACTIVITY LOG" to impeach Major Seals's account of his interview with Shanklin. (Pet'r's Br. Supp. Evid. Hearing Ex. 1 at 20.)  Major Seals, who had worked with the Hampton Police Department for 24 years, testified that the search for D.M. on July 14, 2005 and July 15, 2005, was "one of the most extensive search and rescue missions that we've ever put together." (Feb. 7, 2007 Tr. 353.) Major Seals testified that around noon on the morning of July 15, 2005, he received information that Shanklin wished to speak with the police.[5]  (*Id.* at 355.)  Upon entering the room where Shanklin was detained, Major Seals asked Shanklin whether Shanklin wished to talk to the police even though his attorney was not present.  (*Id.* at 356.)  Shanklin confirmed that he did.  (*Id.*) Major Seals then read Shanklin his *Miranda*[6] rights and Shanklin again confirmed that he wished to talk to Seals, even though Shanklin's attorney was not present.  (*Id.*)  Shanklin then told Seals that Shanklin's aunt and girlfriend "had nothing to do with this.  My attorney told me to tell you where the body is at, but not to talk with you." (*Id.* at 357.)  Seals then prepared a handwritten document which stated: "I, William Shanklin, after being allowed to consult with my attorney Buddy Fox, I asked to speak with the Hampton Police, also after being fully advised of my Miranda warnings.  I understand each of my right as explained, and I still continue to wish to speak with the Hampton Police." (Commonwealth's Ex. 120.)[7]  Shanklin then signed the document. (Feb. 7, 2007 Tr. 359.)

---

[5] Police Officer Vincent James DiPentima testified that he was sitting outside of Shanklin's interview room when Shanklin knocked on the door and asked to speak with the police. (Feb. 6, 2007 Tr. 319–21.)

[6] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[7] The Court has corrected the capitalization in the quotations to this document.

8

Thereafter, Shanklin explained to Seals that he had disciplined D.M. with curling irons. Shanklin further explained that a few hours before Shanklin had reported D.M. missing, he had found D.M. in bed. D.M. "looked funny" and was drooling and "breathing lightly." (*Id.* at 362.) Shanklin stated that he had placed D.M. in his truck, drove D.M. to the woods by the Powhatan Parkway and buried him. Shanklin stated D.M. had died by the time he buried D.M. (Id. at 363–65.) Shanklin agreed to take Seals to D.M.'s body. (*Id.* at 365.) Shanklin then took Seals to where Shanklin had buried D.M.'s body under some leaves. (*Id.* at 365–67.)

During cross-examination, Seals represented that his discussion with Shanklin at the police department had lasted about ten to fifteen minutes. (*Id.* at 381.) In Claim 2, Shanklin faults counsel for not impeaching Seals's testimony in this regard with the police's "INTERVIEW ACTIVITY LOG," which reflected that Seals's interview with Shanklin had lasted only two minutes, from 12:25 p.m. until 12:27 p.m. (Pet'r's Br. Supp. Evid. Hearing Ex. 1, at 20.) In rejecting this claim, the Supreme Court of Virginia found:

> The record, including the trial transcripts and affidavit of counsel, demonstrates that counsel challenged Captain Seals' credibility through vigorous cross-examination on other issues, such as Seals' failure to record the interview and the fact that Seals destroyed his notes of the interview with petitioner. Counsel is not ineffective for overlooking one strategy while pursuing another. *See Williams v. Kelly*, 816 F.2d 939, 950 (4th Cir. 1987). Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

*Shanklin*, No. 090382, at 3.

Shanklin fails to demonstrate that the Supreme Court of Virginia unreasonably concluded that he could not establish prejudice. While the impeachment tactic Shanklin urges here may have slightly diminished Seals's credibility, it would not have caused a reasonable jury to doubt Shanklin's guilt as to the crimes at issue. Shanklin, by his own admission, was the last person to have seen D.M. alive. Shanklin lied when he claimed that D.M. had wandered away from home.

The police discovered D.M.'s horribly damaged body in the location identified by Shanklin. D.M.'s body had burns on his ear and shoulder, and a large, severe burn on his bottom. The forensic evidence reflected that the above-described burns appeared to have been inflicted by a steam iron that the police recovered from Shanklin's apartment.[8] Shanklin had told Corporal Steven Hatfield a particularly implausible story of the origin of D.M.'s burn. Specifically, Shanklin stated he was home with D.M. a few days before D.M. went missing, when he heard D.M. scream. Shanklin discovered D.M. in the bathroom with hot water running in the sink. Shanklin suggested the hot water had caused D.M.'s burns. Thus, even assigning limited weight to Seals's testimony, a reasonable jury would have no reason to doubt that Shanklin abused and murdered D.M. Accordingly, Claim 2 will be DISMISSED.

---

[8] D.M. had numerous other burns and injuries on his body.

10

## IV. SHANKLIN'S OUTSTANDING MOTIONS

Shanklin has moved for an evidentiary hearing and for leave to conduct limited discovery with respect to Claim 2. As reflected above, Shanklin fails to demonstrate the necessity of an evidentiary hearing to resolve his claims. Furthermore, a federal habeas petitioner must demonstrate good cause before he or she is allowed to conduct discovery. *Stephens v. Branker*, 570 F.3d 198, 213 (4th Cir. 2009), *cert. denied*, 130 S. Ct. 1073 (2010). "A showing of good cause must include specific allegations suggesting that the petitioner will be able to demonstrate that he [or she] is entitled to habeas corpus relief," once the facts are fully developed. *Id.* (*citing Bracy v. Gramley*, 520 U.S. 899, 908–09 (1997)). Shanklin fails to demonstrate that he would be entitled to habeas corpus relief with further development of the facts surrounding Claim 2. Accordingly, Shanklin's motions for an evidentiary hearing and to conduct discovery (Docket Nos. 11, 13) will be DENIED.

Shanklin also has moved for the appointment of counsel. Shanklin fails to demonstrate that the interests of justice warrant the appointment of counsel. See 18 U.S.C. § 3006A(a)(2)(B). Accordingly, Shanklin's motions for the appointment of counsel (Docket Nos. 15, 18, 19) will be DENIED.

On October 13, 2011, Shanklin filed a motion entitled, "MOTION TO REQUEST TOLL and or DELAY JUDGMENT." Shanklin represents that he recently filed a second state habeas petition with the Circuit Court alleging that the prosecution withheld favorable exculpatory evidence. Shanklin represents that he "would like to use the previously withheld and newly discovered evidence along with the pending federal 2254 petition in this Honorable Court."

(Pet'r's Notice New Pending State Second or Successive Petition (Docket No. 26) 2.)  Shanklin, however, does not specify the nature of exculpatory information.  Nor has Shanklin formally moved to amend his current § 2254 Petition to include any new claim.  Furthermore, the record reflects that as of October 31, 2011, the Circuit Court denied Shanklin relief on his second state habeas petition. *Shanklin v. Dir., Va. Dep't Corr.*, No. CL11-1217 (Va. Cir. Ct. Oct. 31, 2011).[9] The Circuit Court found, in pertinent part,

> The petitioner contends that he is entitled to relief because the Commonwealth withheld *Brady* material during the trial of his case. He also makes a related claim of ineffective assistance of counsel, alleging that his trial counsel was ineffective for failing to obtain the exculpatory information during his trial.   However, the petitioner, by his own admission, received this "exculpatory" information during civil discovery in another case "on or about June 15, 2010." (Habeas Petition at ¶ 22).
>
> His previous state habeas action, filed in February 2009, was pending before the Supreme Court of Virginia for three months after he received this information. That court dismissed the action by Order dated September 15, 2010. [Citation omitted.]    Accordingly, this action is procedurally defaulted as a successive petition, pursuant to Virginia Code § 8.01-654(B)(2).[10]

*Id.* at 1–2. Section 8.01-654(B)(2) of the Virginia Code constitutes an independent and adequate state procedural rule.  *See George v. Angelone*, 100 F.3d 353, 363–64 (4th Cir. 1996).  Given that the state court proceedings on Shanklin's new claim have concluded, and that the Circuit Court has found the new claim to be procedurally defaulted, Shanklin fails to demonstrate entitlement to relief on his "MOTION TO REQUEST TOLL and or DELAY JUDGMENT."  Accordingly,

---

[9] (Docket No. 29 Ex. 1.)

[10] That statute provides in pertinent part, that a petition for a writ of habeas corpus "shall contain all allegations the facts of which are known to petitioner at the time of filing . . . .  No writ shall be granted on the basis of any allegation the facts of which petitioner had knowledge at the time of filing any previous petition." Va. Code Ann. § 8.01-654(B)(2) (West 2011).

that motion (Docket No. 27) will be DENIED. *See Ingram v. Buckingham Corr. Ctr.*,

No. 3:09CV831, 2011 WL 836826, at *6 (E.D. Va. Mar. 4, 2011) ("Leave to amend is

appropriately denied where the amendment would be futile, such as here, because the proposed

amended claims are procedurally defaulted." (*citing United States v. Pittman*, 209 F.3d 314, 317

(4th Cir. 2000))).

## V. CONCLUSION

For the foregoing reasons, Respondent's Motion to Dismiss (Docket No. 21) will be

GRANTED.  Shanklin's § 2254 Petition will be DENIED, and the action will be DISMISSED.[11]

An appropriate Order shall accompany this Memorandum Opinion.

Date: 2-10-12
Richmond, Virginia

/s/
James R. Spencer
United States District Judge

---

[11] An appeal may not be taken from the final order in a § 2254 proceeding unless a judge
issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue
unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C.
§ 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether
(or, for that matter, agree that) the petition should have been resolved in a different manner or
that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v.
McDaniel*, 529 U.S. 473, 484 (2000) (*quoting Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)).
No law or evidence suggests that Harris is entitled to further consideration in this matter.  A
certificate of appealability will therefore be DENIED.